**Veronica L. DAVIS, Appellant,**

v.

**James WEST, Henry Radoff and Prosperity Bank, Appellees.**

No. 01–08–01006–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 2009.

Rehearing Overruled March 9, 2010.

302

Veronica L. Davis, West Columbia, TX, pro se.

Cynthia Lea Jones, Gerald Scott Siegmyer, Siegmyer, Oshman & Bissinger LLP, John P. Scott, Cruse, Scott, Henderson & Allen, Houston, TX, for Appellees.

James A. West, Houston, TX, pro se.

Panel consists of Justices KEYES, ALCALA and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

Appellant, Veronica Davis, complains that the trial court improperly granted summary judgment dismissing her claims against Henry V. Radoff and Prosperity Bank ("the Bank"). We affirm.

### Background

In 2004, Houston Reporting Service, ("Houston Reporting") filed a suit on a sworn account against Davis, an attorney who used Houston Reporting's services during a past deposition. The suit was filed in Justice Court in Harris County. In its suit, Houston Reporting sought payment of $1083.98 plus attorney's fees, interest and costs. A default judgment was entered against Davis. After the default judgment became final, Houston Reporting began efforts to collect the amount owed. The justice court entered a written order, signed on June 27, 2006, appointing Radoff as receiver and including a turnover order commanding that Radoff take possession of "all ... monies on deposit in financial institutions, financial accounts (bank accounts), certificate of depositions, money market accounts, accounts held by any third party...." Pursuant to the court's order, Radoff was required to post a bond in the sum of $100.00. The turnover order did not state the total amount of the judgment serving as the basis for the receivership, nor did it include any statement as to the costs, fees or interest awarded in that underlying judgment. The underlying de-

fault judgment was not attached to the turnover order and it does not appear in the record of this appeal.

On July 24, 2006, Radoff sent Davis a letter informing her that he had been named receiver and asking that she turn over any nonexempt property to satisfy the judgment against her. On July 25, 2006, the Bank received a faxed letter from Radoff, stating that he had been appointed receiver and empowered to seize funds belonging to Davis. Radoff demanded that all accounts in Davis's name be frozen and he stated that the amount due was $3,400. A copy of the turnover order appointing Radoff as receiver was attached to this faxed letter. On July 26, Radoff sent a second letter to the Bank stating that the amount to be turned over was $4,144.91. The Bank released the sum of $4,144.91 to Radoff. This sum was used to satisfy the judgment owed to Houston Reporting and the receivership was then closed. That same day, the Bank sent Davis a letter informing her that it had received the order from Radoff and that her account had been frozen.

On October 9, 2006, Davis filed this action in district court in Brazoria County against Houston Reporting, its attorney, Radoff and the Bank. Davis asserted a challenge to the receivership, a claim for abuse of process against Radoff, and claims for breach of contract and breach of fiduciary duty against the Bank. Davis also alleged that the Bank had released personal information to Radoff without her permission.

On August 24, 2007, Radoff filed a motion for summary judgment. On February 1, 2008, the trial court granted summary judgment in Radoff's favor on the grounds that he was entitled to derived judicial immunity and dismissed Davis' claims regarding the insufficiency of his bond. The

trial court denied Radoff's no-evidence motion.

On July 21, 2008, the Bank sought summary judgment, arguing that Davis had no evidence to support her claims and that, as a matter of law, it was insulated from any liability by statute. The Bank's motion also argued that Davis could not present any evidence that its failure to demand a certified copy of the turnover order, rather than a faxed copy, was the proximate cause of any of Davis's damages.

Davis filed a response to the Bank's motion and her own cross-motion for summary judgment against the Bank on August 8, 2008. Davis's response to the Bank's motion alleged that the Bank's motion should not be granted due to the fact that the Bank's notice of the hearing failed to give adequate notice and because an adequate time for discovery had not yet elapsed. In her cross-motion, Davis asked that the court grant her summary judgment on her breach of contract claim against the Bank.

On August 12, 2008, the trial court granted the Bank's motion for traditional and no-evidence summary judgment. The trial court denied Davis's motion for summary judgment on October 6, 2008. On November 11, 2008, the trial court entered an order severing Davis's claims against Radoff and the Bank from her claims against Houston Reporting and its attorney. This appeal by Davis followed.

## Analysis

On appeal, Davis complains that the trial court erred by rendering summary judgment on her claims against Radoff and the Bank. As to Radoff, Davis contends the trial court erred by rendering summary judgment in Radoff's favor because Radoff does not enjoy derived judicial immunity nor did Radoff have any "authority to act at all in this case" because the order under

which he acted was invalid. As to the Bank, Davis argues the trial court erred by granting the Bank's motion for summary judgment because (1) the Bank released funds from her account to Radoff without demanding a certified copy of the turnover order, (2) the order appointing Radoff was invalid, and (3) the Bank was not served with the order at its registered address. Davis also complains that she did not receive proper notice of the hearing on the Bank's motion for summary judgment under Rule 21a of the Texas Rules of Civil Procedure.

### Standard of Review

Radoff and the Bank moved for summary judgment on both traditional and no-evidence grounds, and Davis sought a traditional summary judgment on her breach of contract claim. Thus, we apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See, e.g., Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004) (traditional summary judgment); *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003) (no-evidence summary judgment).

When both parties to a suit move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one party summary judgment and denies the other, we review both parties' summary judgment evidence, determine all questions presented, and render the judgment the trial judge should have rendered. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000). When the trial court does not specify the basis on which it granted summary judgment, the judgment will be affirmed on any meritorious ground expressly presented in the motion and which is preserved for appellate review. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

### I. Did the trial court err in granting Radoff's Motion for Summary Judgment?

#### A. Radoff's Derived Judicial Immunity

◼ In her first issue, Davis contends that the trial court erred in granting Radoff's motion for summary judgment because he does not enjoy derived judicial immunity and the Texas Civil Practice and Remedies Code specifically allows suits against receivers.[1]

◼ A person entitled to derived judicial immunity receives the same absolute immunity from liability for acts performed within the scope of his jurisdiction as a judge. *Dallas County v. Halsey,* 87 S.W.3d 552, 554 (Tex.2002). Judicial immunity can attach to certain non-judges because the policy reasons for judicial immunity—protection of individual judges and of the public's interest in an independent judiciary—are also implicated when judges delegate their authority, appoint another to perform services for the court, or allow another to otherwise serve as an

---

1. Davis does not challenge the trial court's grant of summary judgment on the issue of whether Radoff's bond was sufficient. Accordingly, she has waived this issue on appeal. Tex.R.App. Proc. 38.1(i) (brief must contain clear and concise argument, with appropriate citations to authorities and the record); *Smith v. Tilton,* 3 S.W.3d 77, 89 (Tex.App.-Dallas 1999, no pet.) (failure to raise and brief issue relating to error in summary judgment waives issue on appeal).

officer of the court. *Id.* In those circumstances, the immunity attaching to the judge follows the delegation, appointment, or court employment. *Id.* The person acting in such a capacity thus also enjoys absolute immunity, which is known as derived judicial immunity. *Id.*

■ Texas uses a "functional approach" to determine whether someone is entitled to derived judicial immunity. *Id.* at 556–57. The "functional approach looks to whether the person seeking immunity is intimately associated with the judicial process" and whether "that person exercises discretionary judgment comparable to that of the judge." *Id.* at 554 (citing *Delcourt v. Silverman,* 919 S.W.2d 777, 782 (Tex. App.-Houston [14th Dist.] 1996, writ denied)). The functional approach focuses on the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge. *Id.* at 555.

■ Radoff contends that, as a court-appointed receiver acting within the scope of his authority, he is entitled to derived judicial immunity. We agree. "Like a court-appointed bankruptcy trustee acting within his authority as trustee, a court-appointed receiver acts as an arm of the court and is immune from liability for actions grounded in his conduct as receiver." *Rehabworks, LLC v. Flanagan,* No. 03–07–00552–CV, 2009 WL 483207 (Tex.App.-Austin 2009, pet. denied) (mem. op.) (citing *Clements v. Barnes,* 834 S.W.2d 45, 46 (Tex.1992) (court-appointed bankruptcy trustees acting within scope of authority entitled to derived judicial immunity); *Alpert v. Gerstner,* 232 S.W.3d 117, 130–31 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (court-appointed receiver entitled to derived judicial immunity for all acts authorized by court, but not for breach of fiduciary duties); *Spigener v. Wallis,* 80 S.W.3d 174, 183 (Tex.App.-Waco 2002, no pet.) (characterizing court-appointed receiver as agent of court)).

■ "Once an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not—is immune from suit. Once applied to the function, the cloak of immunity covers all acts, both good and bad." *Id.* (citing *Ramirez v. Burnside & Rishebarger, L.L.C.,* No. 04–04–00160–CV, 2005 WL 1812595 (Tex.App.-San Antonio Aug. 3, 2005, no pet.) (mem. op.)).

Here, the turnover order was issued by a Harris County justice court. It recited that "whereupon the Court's review of the papers herein on file, [the Court] became of the opinion that [Houston Reporting] holds and is entitled to collect upon a true, final, valid and subsisting judgment against Defendant–in–Judgment, VERONICA L. DAVIS...." The Court accordingly ordered that

HENRY RADOFF, ... be and is hereby appointed Receiver to serve after posting bond in the sum of $100 and taking the oath of office, in this case pursuant to the Texas Turnover Statute, with all the power and authority to take possession of all non-exempt property of Respondent VERONICA L. DAVIS, that is in the actual or constructive possession or control of Respondent VERONICA L. DAVIS, including but not limited to all property incidental to or associated with the daily operation of Respondent VERONICA L. DAVIS ... including but not limited to all cash, ... drafts and checks, monies on deposit in financial institutions, financial accounts (bank accounts), certificates of deposit, money market accounts, accounts held

by any third party, ... that is in the actual or constructive possession of Respondent VERONICA L. DAVIS; and to pay the proceeds to the Receiver to the extent required to satisfy said judgment, but not to exceed the full amount awarded under the judgment (or balance due if the judgment has been partially satisfied) which amount includes principal, attorney's fees and prejudgment interest, together with postjudgment interest and costs and the amount of attorney's fees awarded herein; ...

On appeal, Davis complains that Radoff took actions violating the turnover order. Specifically, Davis alleges that the order does not allow Radoff to seize property from the Bank but that he instead only may receive property from Davis, that he must act in tandem with the constable or sheriff, and that he was required to hold a hearing to determine the amount of money Davis needed to live on and to provide for her dependents. Davis also appears to allege that Radoff seized exempt assets and that he improperly seized her assets without providing a certified copy of the turnover order to the Bank.

However, as set out above, the turnover order in this case is extremely broad. The order granted Radoff the explicit power to perform the acts that form the basis of Davis's complaints—to locate and take control of any cash she had deposited in bank accounts and to use that money to satisfy the underlying default judgment against her. Davis's petition does not allege any acts by Radoff except those performed in his capacity as receiver, and those acts are within the bounds of the turnover order.

█ Davis's argument regarding Texas Civil Practice and Remedies Code section 64.052 is also unsuccessful. Section 64.052 allows suits against receivers "in their official capacity" to be brought in a court of competent jurisdiction without permission of the appointing court. TEX. CIV. PRAC. & REM.CODE ANN. § 64.052 (Vernon 2008). It is, in essence, a venue provision that has "the effect of making receivers subject to the general venue statute and thereby served the convenience of the public by abolishing the common-law rule that only the court appointing the receivers should have jurisdiction and venue on suits brought against the receiver." *Carson v. Hilley*, 484 S.W.2d 457, 460 (Tex. App.-Fort Worth 1972, no writ). Section 64.052 does not enlarge or restrict the causes of action that may be asserted against a receiver, nor does it abrogate a receiver's derived judicial immunity for acts taken within the scope of his receivership. *See, e.g., Rehabworks, LLC v. Flanagan*, No. 03–07–00552–CV, 2009 WL 483207 (Tex.App.-Austin 2009, pet. denied) ("We have already concluded that derived judicial immunity shields a court-appointed receiver from suit in this case, where the receiver acts as an arm of the court and the suit is based on actions taken within the scope of the receiver's authority.").

Accordingly, we conclude that the trial court properly granted summary judgment on Radoff's motion for summary judgment as a matter of law on his defense of derived judicial immunity. We overrule Davis's first issue.

**B.   The Validity of the Turnover Order**

█ In her second issue, Davis challenges the validity of the turnover order and argues that the trial court improperly granted summary judgment for Radoff because the order under which he acted was invalid. Davis contends the order was invalid because Houston Reporting failed to make the proper showing under Texas Civil Practice and Remedies Code section

31.002(a) when requesting the turnover order and because the turnover order does not specify the dollar amount of the underlying judgment.

■■■ The Texas turnover statute is a procedural device to assist judgment creditors in post-judgment collection. A judgment creditor is entitled to receive aid from a court in order to reach property to obtain satisfaction on a judgment "if the judgment debtor owns property ... that: (1) cannot readily be attached or levied on by ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 2008). The statute empowers courts to order a judgment debtor to turn over nonexempt property that is in the debtor's possession or subject to the debtor's control, including present or future rights to property. *Id.* § 31.002(b)(1). It also allows a court to appoint a receiver "with the authority to take possession of the nonexempt property, sell it and pay the proceeds to the judgment creditor to the extent to satisfy the judgment." *Id.* § 31.002(b)(3). The trial court is not required to identify in the order the specific property subject to turnover. *Id.* § 31.002(h). In addition, the trial court may enforce the turnover order by contempt proceedings. *Id.* § 31.002(c).

We have previously construed the turnover statute as requiring an evidentiary showing to support the entry of the court's order:

> Before a trial court may grant relief under section 31.002(b), the conditions of section of 31.002(a) must exist, namely, (1) the entity that is to receive aid must be a judgment creditor; (2) the court that would grant aid must be one of appropriate jurisdiction; (3) the aid to be given must be in order to reach property to obtain satisfaction on the judg-

ment; and (4) the judgment debtor must own property (including present or future rights to property) that: (a) cannot be readily attached or levied on by ordinary legal process and (b) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

*Tanner v. McCarthy,* 274 S.W.3d 311, 322 (Tex.App.-Houston [1st Dist.] 2008, no pet.). In essence, Davis complains on appeal that the turnover order was issued without the necessary evidentiary underpinnings, and that the scope of Radoff's powers exceeds that allowed by the statute. We construe this as a collateral attack on the turnover order.

■■■ "A collateral attack on a judgment is an effort to avoid its binding force in a proceeding, instituted not for the purpose of correcting, modifying, or vacating it, but in order to obtain specific relief against which the judgment stands as a bar." *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 549 (Tex.App.-Houston [1st Dist.] 1994, no writ) (quoting *Texaco, Inc. v. LeFevre,* 610 S.W.2d 173, 176 (Tex.Civ. App.-Houston [1st Dist.] 1980, no writ)).

■■■ As a general rule, turnover orders are final, appealable orders. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 909 S.W.2d 505, 506 (Tex.1995). As such, turnover orders must be attacked on direct appeal. *See, e.g., In re Wiese,* 1 S.W.3d 246, 249 (Tex.App.-Corpus Christi 1999, orig. proceeding). In *Wiese,* the judgment debtor failed to comply with a turnover order and was held in contempt. *Id.* at 247. She petitioned for a writ of habeas corpus, arguing in part that the underlying turnover order was void because it made no provision for the deduction of underlying reasonable and necessary business expenses. *Id.* The Corpus Christi Court of Appeals declined to reach that argument because the debtor had

failed to challenge the turnover order by direct appeal. *Id.* at 249. The Court noted that the turnover order in that case failed to include any evidentiary findings relating to the amount of the property to be seized and whether the debtor owned enough property to satisfy the judgment, and also failed to make provisions for the debtor's reasonable and necessary business expenses. *Id.* at 250. Nevertheless, the Court held that "the fact that the turnover order is contrary to a statute or contains errors only makes the judgment 'voidable' and does not give a party the right to circumvent ordinary appellate or other direct procedures to correct it." *Id.* at 250–51.

Similarly, even if the turnover order in this case failed to include the amount of the underlying judgment to be satisfied, required Davis to turnover exempt property or contained other requirements in contravention of the turnover statute, the order would be voidable—not void—and it must therefore have been the subject of a direct attack. *Id.* at 250. Davis cannot use these alleged deficiencies to defeat Radoff's derived judicial immunity or to hold Radoff or the Bank liable for actions taken in reliance upon the turnover order when she failed to timely prosecute a direct appeal of the turnover order or seek injunctive or mandamus relief prohibiting the execution of the turnover order. We overrule Davis's second issue.

**II. Did the trial court err by granting the Bank's motion for summary judgment?**

Davis also contends that the trial court erred by granting the Bank's motion for summary judgment. The Bank moved for both a no-evidence and traditional summary judgment, and the order granting summary judgment in the Bank's favor does not specify the grounds upon which

judgment was granted. Accordingly, we may affirm on any grounds that could have supported the trial court's judgment. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

In her third and fourth issues, Davis argues that the trial court improperly granted summary judgment in the Bank's favor because the turnover order is "invalid on its face." We have addressed these points above, and have found them to be an impermissible collateral attack on the turnover order. We overrule that portion of Davis's third and fourth issues addressing the validity of the underlying order.

**A. The Bank's Failure to Insist Upon a Certified Copy of the Turnover Order**

■ The remaining portion of Davis's third issue argues that the trial court erred in granting summary judgment in the Bank's favor because the Bank never received a certified copy of the turnover order and it may not therefore rely upon the normal statutory protections for institutions who act in accordance with court orders.

■ A financial institution that complies with an order to turn over assets to a receiver is not liable for such compliance to a judgment debtor. TEX. CIV. PRAC. & REM.CODE ANN. § 31.010 (Vernon 2008). Additionally, when a claim is made against a customer of a financial institution, "[t]he customer bears the burden of preventing or limiting a financial institution's compliance with or response to [such] claim . . . ." TEX. FIN.CODE ANN. § 59.008(c) (Vernon 2008) (listing available remedies such as restraining orders, injunctions, and protective orders to prevent or suspend financial institution's response to claim against customer). "Section 59.008 unequivocally places the burden on a customer of a financial institution to prevent a financial institution from complying with or re-

sponding to notices of freeze, receivership, restraining orders, and injunctions asserting or establishing claims against customer accounts." *Yazdchi v. Bank One, Texas, N.A.,* 177 S.W.3d 399, 406 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

Davis argues on appeal that the Bank is not entitled to rely upon these statutory protections because the Bank failed to insist that it be served at its registered address for service with a certified copy of the turnover order. In addition, Davis argues that the Bank was not required to comply with Radoff's request because he never served a certified copy of the turnover order upon it and that the Bank's compliance with his request was therefore a breach of contract and a breach of a fiduciary duty to Davis.

The Bank's no-evidence motion for summary judgment below, however, specifically challenged the causation element of Davis's claims. Thus, the Bank's no-evidence motion required Davis to present evidence that the Bank's failure to insist that Radoff provide it with a certified copy of the turnover order at its registered address was the proximate cause of any damages or injury to Davis. Whether or not the Bank was entitled to rely on the statutory protections is an issue that we need not reach here, because Davis did not present any evidence to show that the Bank's actions were the cause of any damages or injury to her. *See, e.g.,* Tex.R. Civ. P. 166a(i); *Landers v. State Farm Lloyds,* 257 S.W.3d 740, 746 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (no-evidence motion filed under 166a(i), challenging specific element of plaintiff's case, shifts burden to nonmovant to raise genuine issue of material fact by presenting at least scintilla of evidence as to challenged element);

*Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.) (damages to plaintiff resulting from breach is element of breach of contract action); *Martin v. Estates of Russell Creek Homeowners Ass'n, Inc.,* 251 S.W.3d 899, 904 (Tex.App.-Dallas 2008, no pet.) (damages "necessary" element of breach of fiduciary duty claim and nonmovant must present at least scintilla of evidence raising genuine issue of material fact when responding to no-evidence motion for summary judgment motion).

**B. No Evidence of Breach of Contract and Breach of Fiduciary Duty**

Davis also argues that the trial court erred by granting summary judgment in the Bank's favor on her breach of contract and breach of fiduciary duty claims. First, Davis argues that the Bank breached its fiduciary and contractual duties to her by failing to notify her of Radoff's actions prior to releasing her funds to Radoff. Davis alleges that, had she been timely notified of Radoff's demand upon the Bank, she would have been able to take action to prevent Radoff's depletion of her account. Further, she alleges that the Bank breached its duties to her by actually turning over funds in her account to Radoff. However, Davis never presented any authority to show that the Bank had a duty—fiduciary or contractual—to promptly notify her of Radoff's demands, nor did she show that the Bank failed to notify her.[2]

Whether a confidential or fiduciary relationship exists is normally a question of fact to be decided by a jury. *Crim Truck & Tractor v. Navistar Int'l,* 823 S.W.2d 591, 594 (Tex.1992), superseded by statute, Tex.Rev.Civ. Stat. art.

---

**2.** In fact, the evidence in the record reveals that the Bank timely notified Davis—the day after receiving Radoff's first letter—of its receipt of Radoff's demands and its compliance with the turnover order, whether or not it had an affirmative duty to do so.

4413(36), § 6.06(e), as recognized in *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex.2002); *see also Taylor v. GWR Operating Co.*, 820 S.W.2d 908, 911 (Tex.App.-Houston [1st Dist.] 1991, writ denied). When the issue is one of no evidence or conclusive evidence, the issue is a question of law. *Crim Truck & Tractor*, 823 S.W.2d at 594 (no evidence). The relationship between a bank and its customers does not usually create a special or fiduciary relationship. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex.App.-Houston [1st Dist.] 1991, no writ). "Specifically, the relationship between a bank and its customers does not usually create a special or fiduciary relationship. However, when a special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Farah*, 927 S.W.2d at 675. In responding to the Bank's no-evidence motion for summary judgment, Davis did not present any such "extraneous facts and conduct" justifying the imposition of a fiduciary relationship with the Bank.

Similarly, Davis never cited any contractual provision in her deposit agreement with the Bank that prohibited the Bank's payment of funds from her account pursuant to a turnover order issued by a court or which required the Bank to notify her sooner than the next day after receiving the turnover order. Nothing in the provisions of the depositor agreement that Davis cites prevented the Bank from complying with the turnover order or requires that the Bank notify her immediately of a turnover order. In fact, the language she cites specifically acknowledges that the Bank may have obligations arising from "state and federal law" that are not outlined in the depositor agreement.

Davis relies upon *FNFS, Ltd. v. Sec. State Bank & Trust*, 63 S.W.3d 546 (Tex. App.-Austin 2001, pet. denied), to argue that the Bank had an implied duty to pay only those sums she ordered from her account, and no others. However, *FNFS* does not stand for the proposition Davis urges. Instead, *FNFS* dealt with the question of "negotiation" of payable instruments and used the cited language to delineate a bank's obligations to pay negotiable instruments as instructed. *Id.* at 550 ("The purpose of an endorsement is to identify the user of the check so that the endorsement can be compared with the directions of the maker, that is, to ensure the endorser is the same individual or entity as the payee.... This necessarily follows from the understanding that, '[w]hen a customer deposits funds with a bank, the bank impliedly agrees to disburse those funds only in accordance with the depositor's instructions.' ") (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 563 (Tex.1984); Tex. Bus. & Com.Code Ann. §§ 3.404(a), 4.401(a)).

Accordingly, we hold that the trial court did not err by rendering summary judgment on the Bank's behalf on Davis's claims and overrule the remaining portion of Davis's third and fourth issues.

### III. Did the trial court err by failing to grant Davis's motion for summary judgment?

In her fifth issue, Davis argues that the trial court erred by not granting her motion for summary judgment against the Bank. Davis's argument on this issue is nearly incomprehensible, but she appears to reurge the grounds discussed elsewhere—that the Bank breached a contrac-

tual or fiduciary duty to her and that the turnover order was invalid. As discussed above, Davis was not entitled to summary judgment on these grounds as a matter of law. We overrule Davis's fifth issue.

### IV. Texas Rule of Civil Procedure 21a

In her sixth issue, Davis argues that the trial court erred by granting summary judgment for the Bank because she did not receive sufficient notice of the hearing on the Bank's motions and because she lacked "adequate time" to conduct discovery.

The certificate of service on the Bank's motion for summary judgment states that the document was forwarded to Davis "via Facsimile and/or Certified Mail, Return Receipt Requested and/or First Class Mail" on July 17, 2008. The summary judgment motion in the record reflects that the motion was filed on July 21, 2008. Davis's response to the Bank's motion for summary judgment alleged that an inadequate time for discovery had elapsed and that she had not been afforded proper notice of the hearing on the Bank's motion. Davis did not, however, move for a continuance nor did she file an affidavit as to any of the facts supporting her objection. The summary judgment hearing took place on August 12, 2008. There is no evidence in the record to establish when Davis first received notice of the August 12, 2008 hearing date. At the summary judgment hearing, Davis again objected to inadequate notice and inadequate time for discovery but she failed to present any motion to continue or file any affidavits regarding her objection.

In the summary judgment context, Texas Rules of Civil Procedure 166a(c) requires "[e]xcept on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing." Tex.R. Civ. P. 166a(c). The rules for filing and serving pleadings apply to summary judgment motions, including Rule 21a, which extends the minimum notice by three days when the motion is served by mail. *See Lewis v. Blake,* 876 S.W.2d 314, 315–16 (Tex.1994). A certificate of service is prima facie evidence of the fact of service, but nothing in the rule "preclude[s] any party from offering proof that the notice or instrument was not received, or, if service by mail, that it was not received within three days. . . ." Tex.R. Civ. P. 21a.

Davis complains that the trial court erred in holding the hearing on the motion for summary judgment because the hearing took place 22 days after the filing of the motion and "a hearing may not be held fewer than 24 days between the time the motion is mailed and the day of the hearing." Davis's argument confuses the filing of a motion with the trial court, serving a copy of the motion upon a nonmovant, and notice that the motion is set for hearing or submission.

The Bank's motion for summary judgment was served by mail upon Davis 26 days before the hearing on the motion was held. The motion was then filed with the trial court 22 days before the hearing. We do not read the rules as requiring that Davis be afforded 24 days' notice of the *filing date* of the motion for summary judgment. We overrule Davis's issue relating to service of the motion.

Davis also argues on appeal that Rule 166a(i) states that a no-evidence motion for summary judgment may be filed "after an adequate time for discovery." Tex.R. Civ. P. 166a(i). Davis contends that she did not have an adequate time for discovery in light of health problems she encountered while the case was on file. However, Davis waived any objection to an

inadequate time for discovery by failing to file an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco, Inc. v. Enterprise Prods.*, 925 S.W.2d 640, 647 (Tex.1996) (failure to file affidavits or verified motion for continuance waives objection as to lack of time for adequate discovery); *Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 450–51 (Tex.App.-Dallas 2002, no pet.) (same).

We overrule Davis's sixth issue.

### Conclusion

Because the trial court did not err by entering summary judgment in favor of Radoff and the Bank, we overrule Davis's issues on appeal and affirm the judgment of the trial court.